UNITED STATES OF AMERICA
EASTERN DISTRICT FOR THE STATE OF MICHIGAN

KEIKO OE,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN, MAHDI TABRA,
and JAMES LAWRENCE

    Defendants.

Case No.
Hon.

Nicholas Roumel (P37056)
**NACHT & ROUMEL PC**
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com

**COMPLAINT AND JURY DEMAND**

Plaintiff Keiko Oe makes her complaint of workplace discrimination as follows:

**Parties/Jurisdiction/Venue**

1. Plaintiff Keiko Oe ["Plaintiff," "Ms. Oe"] resides in Washtenaw County, Michigan, and was at all times relevant a Unit Custodian for Environmental Services at Michigan Medicine (the hospital).

1

2. Defendant Regents of the University of Michigan ["UM"] are the governing body of a State of Michigan public university located in Ann Arbor, Washtenaw County, Michigan.

3. Defendant Mahdi Tabra ("Defendant Tabra," "Mr. Tabra") was at all times relevant the Discharge Team Supervisor for Environmental Services at Michigan Medicine, and Ms. Oe's supervisor. He is sued in his individual and official capacities.

4. Defendant James Lawrence ("Defendant Lawrence," "Mr. Lawrence") was at all times relevant the Training Specialist Lead for Environmental Services at Michigan Medicine, and Ms. Oe's manager. He is sued in his individual and official capacities.

5. The jurisdiction of this court is invoked pursuant to 42 USC §1983 for deprivation of Plaintiff's right to freedom of speech under the First Amendment to the United States Constitution.

6. The Michigan State claims are based on the Elliott-Larsen Civil Rights Act, MCL § 37.2201 *et seq.* ["ELCRA"].

7. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

8. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to the Acts cited above as well as *Ex Parte Young*, 209 U.S. 123 (1908) pursuant to Plaintiff's request for prospective injunctive relief.

9. Venue is proper in the Eastern District of Michigan as all parties are located within of the Eastern District of Michigan and the events described in this lawsuit took place primarily in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

10. Plaintiff Ms. Oe identifies as female, Asian-American.

11. She began working for UM on June 4, 2018 as a Unit Custodian, at Michigan Medicine (hospital).

12. Ms. Oe performed her job diligently and with a high degree of competence. However, Plaintiff was an outspoken advocate for the civil rights or herself and others, which precipitated the protected activity that caused her termination.

13. On March 25, 2020, she was disciplined by Mr. Tabra for allegedly wearing PPE in the corridor outside the patient rooms, and accused of increasing the risk of transmitting COVID for wearing PPE (*sic*). She received a written warning.

14. On April 8, 2020, she was again disciplined by Mr. Tabra for allegedly dragging a heavy bag of soiled linens on the floor. She received a 1 day disciplinary layoff ("DLO").

3

15. On May 14, 2020, Mr. Tabra again disciplined Ms. Oe, this time for arriving ten minutes late to an assignment to clean a patient room. She received a 2 day DLO.

16. Ms. Oe's bargaining unit, AFSCME, grieved her discipline.

17. A grievance hearing was held on June 2, 2020. In that hearing, Ms. Oe argued that she was being discriminated against because of her Asian race.

18. Mr. Tabra and Defendant Lawrence summoned Ms. Oe to a meeting, at approximately 7:30 PM on June 4, 2020.

19. In preparation for that meeting, they had solicited statements from four of Ms. Oe's co-workers, citing conversations in which Ms. Oe discussed what they described as "racial stuff" that allegedly made them feel uncomfortable.

20. The witness statements variously stated that Ms. Oe engaged in conversations about race with co-workers; that she felt she was treated differently because of her own race and skin color.

21. In the meeting, Ms. Oe defended her belief that she was treated more harshly by Mr. Tabra because of her race and color.

22. Three days later, because of these discussions about race, Defendants placed Ms. Oe on suspension, with a recommendation for termination, pending a disciplinary review conference ("DRC").

23. In perhaps what was a classic Freudian slip, the notice of suspension stated the discipline was supported by the attached "**whiteness** statements."

24. On June 23, 2020, after the DRC, Ms. Oe was in fact terminated for "behavior" with a recommendation that she not be rehired at UM.

## LEGAL ALLEGATIONS

### *Count I – Race Discrimination*

25. Ms. Oe was a member of a protected class, Asian-American.

26. She was subject to adverse employment actions, as described above, when she was discharged and disciplined on prior occasions.

27. Ms. Oe has consistently been a victim of disparate treatment because of her race and color.

28. ELCRA states in relevant part at MCL 37.2202:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

29. Defendants' termination of Ms. Oe constituted racial discrimination in violation of this section.

30. Defendants' discriminatory conduct has damaged Plaintiff as described herein and below.

### *Count II – Retaliation*

31.  ELCRA also states at MCL 37.2701 that:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation ….

32.  All Defendants are "persons" as defined by ELCRA, MCL 37.2103.

33.  As described above, Ms. Oe opposed discriminatory conduct in the workplace, and Defendants retaliated against her for doing so, by terminating her employment.

34.  Defendants Tabra and Lawrence, more particularly, conspired to retaliate against Ms. Oe by meeting together with her, accusing her of misconduct by having these conversations about race, and working together to terminate her for this conduct.

35.  Such retaliation is in violation of ELCRA, MCL 37.2701.

36.  This retaliatory conduct has damaged Ms. Oe as stated herein and below.

### *Count III – First Amendment*

37.  Plaintiff exercised her First Amendment right regarding a matter of significant public concern, relating to race relations and discrimination.

38. Plaintiff's protected speech caused no material or substantial disruption in the workplace.

39. Defendants' subsequent decision to discipline and terminate Ms. Oe was in retaliation for her exercise of his First Amendment rights.

40. This retaliation against Plaintiff violated her right to be free from punishment or retaliation for exercising her First Amendment rights, under the 14th Amendment to the U.S. Constitution, codified by 42 USC § 1983.

41. At all times relevant, Ms. Oe had a clearly established right to freedom of speech of which a reasonable public official would have known.

42. Because the individual Defendants violated constitutional rights which a reasonable public official should have known about, they are not entitled to governmental immunity in either their official or individual capacity.

43. The individual Defendants, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's First Amendment rights, and acted out of vindictiveness, malice and ill will towards Plaintiff, and bias and animus, with intent to punish Plaintiff for and to deter her from exercising those rights.

44. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as set forth herein and below.

## Damages

45. Defendants' conduct has caused Plaintiff to suffer the following:

7

    a.    *Economic Damages* – lost wages, lost earning opportunity, lost value of benefits, attorney fees, incidental and consequential damages.

    b.    *Non-Economic Damages* – harm to reputation, emotional distress, mental anguish and continuing mental anguish, denial of social pleasures and enjoyment, inconvenience, embarrassment, ridicule, humiliation, mortification, fear, and outrage.

46.    At all times relevant, Plaintiff has made a good faith effort to mitigate her damages.

47.    The individual Defendants' disregard for Plaintiff's First Amendment rights was intentional, outrageous, vindictive, and malicious, and warrants the imposition of punitive damages.

## JURY DEMAND

Plaintiff demands a jury trial.

## RELIEF REQUESTED

*W H E R E F O R E* Plaintiff requests this honorable court grant her:

    a.    damages against all Defendants for Counts I and II, and against the individual Defendants in their individual capacities based on Count III, and as otherwise warranted by the law and the proofs, including:

        i.    economic and non-economic damages as described above;

  ii. the greatest possible combination of non-economic and exemplary damages;

  iii. punitive or special damages as permitted by law;

 b. compensable litigation costs and pre-judgment and post-judgment interest as permitted by law;

 c. attorney fees as permitted by law;

 d. prospective relief, as permitted by law and equity, against Defendant UM and the individual Defendants in their official capacities, for reinstatement and commensurate relief;

 e. other remedies as are just, appropriate, and permitted by law or equity.

       Respectively submitted,

       NACHT & ROUMEL, P.C.

       */s/ Nicholas Roumel*

       Nicholas Roumel

April 30, 2021      Attorneys for Plaintiff